**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Karen Bachman,

Plaintiff,

v.

Laser Spine Institute LLC,

Defendant.

No. CV-15-00418-PHX-DGC

**ORDER**

Defendant Laser Spine Institute, LLC ("LSI") moves for summary judgment on Plaintiff Karen Bachman's claim that LSI unlawfully interfered with her exercise of rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. Ch. 28. Doc. 32. Bachman has filed a response and LSI has replied. Docs. 34, 36. The Court concludes that oral argument will not aid in the disposition of this matter.[1] For the reasons set forth below, the Court will deny LSI's motion.

## I. Background.

In January 2011, LSI hired Bachman to work as a Certified Registered Nurse Anesthetist ("CRNA") in its Scottsdale, Arizona facility. Doc. 33, ¶ 2. Bachman was responsible for meeting with patients before surgery, escorting them to and from the operating room, and providing sedation. *Id.*, ¶ 10. Bachman reported to LSI's Executive Director, Heidi Kruger, and to its Director of Anesthesia, Dr. Paul Gaitan. *Id.*, ¶¶ 3-4.

---

[1] The parties' requests for oral argument are therefore denied. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

While employed at LSI, Bachman was subject to the company's attendance and absence policy. The policy required employees to refrain from unscheduled absences, tardy arrivals, or early departures ("occurrences"), except in cases of "unexpected illness" or other "unavoidable situations." Doc. 33-1 at 72. Even in these special cases, employees were expected to notify their supervisor of the reason and expected length of the absence at least two hours before their scheduled start time. *Id.* Failure to provide timely notice was treated as a "no show" for that day. *Id.* Employees who failed to comply with LSI's attendance policy were subject to escalating corrective actions that will be described in more detail below.

Bachman apparently complied with this policy without incident for over a year and a half after beginning at LSI. At the beginning of her shift on November 13, 2012, however, Bachman scheduled a same-day doctor's appointment to address an increase in her blood pressure she had noticed the day before. Doc. 33, ¶¶ 13-17, Doc. 35, ¶¶ 15, 17. She then sent a text message to her supervisor, Dr. Lahud, requesting permission to leave work for a few hours to attend the appointment. Doc. 33, ¶ 20. Dr. Lahud came to the operating room where Bachman was working to discuss her request and asked her what time she needed to leave and whether she needed to take the day off. Doc. 35, ¶ 21. He left without explicitly approving or denying Bachman's request. Doc. 33, ¶ 21.

When Dr. Lahud did not return and had not made arrangements for another CRNA to take over Bachman's immediate work, Bachman asked Dr. Weiss, the surgeon she was working with at the time, for permission to attend the appointment. Doc. 35, ¶ 23. Dr. Weiss did not object to the request, and made arrangements for another CRNA to replace Bachman. Doc. 35, ¶ 43. After briefing her replacement on the ongoing surgery, Bachman left to attend her appointment. Doc. 35-1, ¶ 3. She returned a few hours later and completed her work for that day. Doc. 33, ¶ 25. Although LSI now contends that this incident was a violation of its attendance and absence policy, Bachman was never written up over the incident, and at no time during 2012 did any of Bachman's supervisors indicate that her actions were improper. Doc. 36, ¶ 74.

On November 15, 2012, Bachman delivered a letter to LSI's Human Resources department complaining of intolerable working conditions at LSI. Doc. 33-1 at 54. The letter complained that LSI had refused to permit her to take lunch or bathroom breaks, and that she had "[n]o time off to see [her] physician at [her] physician's request to see [her] on an urgent basis." *Id.* Bachman stated that she might be forced to resign if these conditions did not improve, and asserted the right to take a 15-day leave of absence under A.R.S. § 23-1502(c), Arizona's constructive discharge statute. *Id.* Upon receipt of this letter, LSI's Human Resource Director instructed Bachman to leave early and to take time off. Doc. 33, ¶ 31. Bachman did so, taking approximately two weeks of leave. *Id.*, ¶ 32.

On November 27, 2012, LSI's Executive Director, Heidi Kruger, responded to Bachman's letter. Doc. 33-1 at 56. Kruger assured Bachman that LSI took her allegations "very seriously" and stated that LSI had "thoroughly investigated [her] allegations, and hope[d] . . . to discuss [her] concerns at length when [she] return[ed] to work." *Id.* The next day, Bachman informed Kruger that her doctors had not yet cleared her to return to work. Doc. 33-3 at 2. She requested an additional four weeks of leave to address her medical issues.[2] *Id.* at 3. Shortly thereafter, Kruger provided Bachman with FMLA paperwork, which Bachman completed. *Id.*, ¶ 36. Upon receipt of this paperwork, LSI approved FMLA leave from November 28, 2012 until February 20, 2013. *Id.*, ¶ 37.

On January 1, 2013, Dr. Weiss recommended that Bachman be reappointed to active staff and granted privileges at the LSI for two more years. Doc. 35-1 at 25. LSI sent Bachman a letter informing her of her reappointment. *Id.* at 23.

On February 13, 2013, Bachman delivered a letter to LSI concerning her return to work. Doc. 35-1 at 8. The letter stated that Bachman was "ready, willing, and able to

---

[2] Bachman's medical issues during this time included hypertension, stress, fatigue, and syncope (i.e., temporary loss of consciousness due to sudden decrease in blood pressure). Doc. 33-1 at 59. Bachman was admitted to the emergency room on November 28, 2012 in connection with these issues. *Id.*

return to work and perform all of [her] job responsibilities." *Id.* The letter included an attachment from Bachman's doctor indicating that Bachman should work only six hours a day for her first week back, and that she should not engage in any "prolonged repetitive bending or twisting" during that week. *Id.* at 9. The letter also explained that Bachman expected to attend her final physical therapy appointment on February 22nd. *Id.* at 8.

When Bachman returned to work on February 19, 2013, LSI provided Bachman with a notice that her employment was terminated "[b]ased on incidents occurring in the workplace prior to your commencement of your leave of absence." Doc. 33-1 at 83. LSI asserts that it "terminated [Bachman's] employment due to her failure to follow company policy and her abandonment of her job duties on November 13, 2012." *Id.* at 4-5.

## II. Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Analysis.

The FMLA establishes the "minimum labor standard for leave" in the United States. *Bachelder v. Am. West Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001) (citing S. Rep. No. 103-3 at 4). Employees covered by the FMLA are entitled to take up to

twelve weeks of leave each year for family or medical reasons, and must be reinstated to their original position (or an equivalent) upon return. 29 U.S.C. §§ 2612(a), 2614(a). It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. *Id.* § 2615(a)(1). The Department of Labor interprets this provision as prohibiting employers from using an employee's taking of FMLA leave "as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c). Thus, an employee will prevail on a claim for unlawful interference with FMLA rights if she shows that (1) she took FMLA protected leave, (2) she suffered an adverse employment action, and (3) her use of protected leave was a factor contributing to her employer's decision. *Bachelder*, 259 F.3d at 1125. A plaintiff may prove these elements "by using either direct or circumstantial evidence, or both." *Id.*

LSI does not dispute that Bachman took FMLA protected leave or that she suffered an adverse employment action immediately upon her return. Instead, LSI argues that "[it] would have terminated her employment regardless of [her] request for and use of FMLA leave." Doc. 32 at 9. LSI contends that it would have terminated her for "fail[ing] to comply with company policy on November 13, 2012." *Id.* at 8. For several reasons, the Court concludes that factual issues preclude summary judgment.

First, LSI presents no evidence that Bachman was written up for the November 13, 2012 incident or that any of her supervisors suggested it was improper until shortly before she was terminated. Indeed, more than a month and a half after the incident, Bachman was reappointed to active staff and granted privileges at LSI as recommended by Dr. Weiss. Doc. 35-1 at 23.

Second, LSI's stated policy on "Attendance and Absences/Tardies" provides that any unscheduled absence constitutes an "occurrence." Doc. 37-1 at 22. Under the heading of "Corrective Action," the policy then states that "[u]nscheduled absences will be monitored and addressed through corrective action according to the following schedule." *Id.* at 23. The schedule provides that two occurrences in a 12-month period

will result in "Documented Verbal Coaching," three will result in a "Written Warning," four will result in a "Final Written Warning," and five will result in "Separation of Employment." *Id.* at 24. Even if Bachman's departure from work on November 13, 2012 could somehow be characterized as a more serious "No call – No show," the schedule states that the first such event will result in a "Final Written Warning" and only the second will result in "Separation of employment." *Id.*

LSI emphasizes that Bachman was an employee at will and could be terminated for any reason. It also cites a portion of its policy which lists "leaving work without authorization" among 36 categories of possible infractions and states that the listed infractions could result in disciplinary action "up to and including immediate termination." *Id.* at 28. But the list of possible infractions includes such serious offenses as sexual harassment, sale of illegal drugs on the job, reporting to work intoxicated, and destruction of company property. *Id.* at 28-29. A reasonable jury could conclude that the prospect of "immediate termination" identified with this list applies to these more serious infractions; that the detailed and precise schedule of corrective steps for absences from work applies to Bachman's absence on November 13, 2012; that LSI did not follow its own schedule of escalating corrective actions in her case; and that LSI's decision, therefore, was not made for policy reasons. This is particularly true in light of the facts surrounding Bachman's absence: (1) she left work to attend a doctor's appointment, (2) for the purpose of addressing recently-appearing high blood pressure that LSI does not dispute, (3) with permission from the surgeon for whom she was working, (4) only after she had been replaced in the operating room by another CRNA and had briefed the CRNA on the patient, (5) she texted Dr. Lahud while away to apprise him of when she would return, and (6) she returned to work later that day and completed her shift.

Third, Bachman states in her affidavit that the company's stated reasons for her termination, and its description of when the termination decision was made, changed over time. This testimony by Bachman could cause a reasonable jury to doubt LSI's professed reason for its decision.

Citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002), LSI argues that these are "uncorroborated and self-serving" statements by Bachman should be disregarded by the Court. But as the Ninth Circuit has noted, the declaration at issue in *Villiarimo* "included facts beyond the declarant's personal knowledge and provided no indication how she knows these facts to be true." *S.E.C. v. Phan*, 500 F.3d 895, 910 (9th Cir. 2007) (quotation marks and brackets omitted). The same is not true of Bachman's affidavit, which recounts a conversation she personally had with an LSI officer. Doc. 35-1 at 3.

Fourth, a jury could take into account the timing of Bachman's termination in deciding whether it was related to her FMLA leave. It occurred immediately after her return from an extended FMLA leave and immediately after she had informed LSI that further leave would be required.

Because Bachman has presented evidence that raises factual issues regarding the reasons for her termination, the Court must deny LSI's motion for summary judgment.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Doc. 32) is **denied.**
2. The Court will set a final pretrial conference by separate order.

Dated this 14th day of January, 2016.

David G. Campbell
United States District Judge